Kenneth Eugene CAMPBELL, Plaintiff–Appellant,

v.

Heidi ROBINSON and Sarkes Tarzian, Inc., Defendants–Appellees.

Kenneth Eugene CAMPBELL, Plaintiff–Appellant,

v.

TIMES PRINTING COMPANY, Mark Curriden, and Heather Smith, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

March 21, 1997.

Permission to Appeal Denied by Supreme Court Oct. 6, 1997.

---

Charles G. Wright, Jr., Chattanooga, for Plaintiff–Appellant.

Roger W. Dickson, William P. Eiselstein, Miller & Martin, Chattanooga, for Defendants–Appellees.

1. The *New York Times Rule* is stated as follows: "The constitutional guarantees require ... a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual mal-

## OPINION

McMURRAY, Judge.

These consolidated cases present two common issues for our determination. In each case, the trial court dismissed the complaint which sought damages for defamation. The court determined that the plaintiff, a public school teacher, was a public official for the purposes of the law of defamation. The court further found that the complaints did not state a cause of action for defamation against a public official. We affirm the judgment of the trial court.

The issues before us are as follows:

1. Is a public school teacher a public official?

2. Does the complaint state a cause of action even if a public school teacher is a public official?

We will discuss the issues in order. There is no authority from this jurisdiction cited by either party and our research has revealed none where the precise question presented here has been addressed, i.e., is a teacher a "public official."

Nationwide, a wide split of authority exists regarding the question of whether a public school teacher is a public official within the meaning of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[1] See, e.g., *Franklin v. Lodge 1108, Benevolent and Protective Order of Elks,* 97 Cal.App.3d 915, 159 Cal.Rptr. 131 (1979); and *True v. Ladner,* 513 A.2d 257 (Me.1986); *Richmond Newspapers, Inc. v. Lipscomb,* 234 Va. 277, 362 S.E.2d 32, 36 (1987). These cases held that a public school teacher was not a public official within the meaning of the *New York Times* rule. On the other hand, *Basarich et al., v. Rodeghero, et al.,* 24 Ill. App. 3rd 889, 321 N.E.2d 739 (1974); *Elstrom v. Independent School District No. 270,* 533 N.W.2d 51 (Minn.App.1995) and *Kelley v. Bonney, et al.,* 221 Conn. 549, 606 A.2d 693 (1992) each held that a public school teacher was a public official within the meaning of the *New York Times* rule.[2]

ice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

2. This is by no means meant to be a complete listing of cases so holding.

While, as noted, our courts have not addressed the precise issue presented here, we feel that under the direction of the U.S. Supreme Court and other cases in this jurisdiction, it is unnecessary to go outside our own jurisprudence to find applicable authority that a teacher is a public official. In *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597, (1966) we find the following guidance:

> We remarked in *New York Times* that we had no occasion "to determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of this rule, or otherwise to specify categories of persons who would or would not be included." (Citations omitted.) No precise lines need be drawn for the purpose of this case. The motivating force for the decision in *New York Times* was twofold. We expressed "a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open, and that [such debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." (Citations omitted.) There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of these issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs.

*Rosenblatt,* 383 U.S. 75, 85, 86 S.Ct. 669, 675–76, 15 L.Ed.2d 597, 605.

█ *Rosenblatt* further cautions that whether a person is a public official should not be answered by reference to state-law standards. *Rosenblatt,* 383 U.S. 75, 83–84, 86 S.Ct. 669, 674–75, 15 L.Ed.2d 597, 604. We understand this to mean that states can not be more restrictive than the United States Constitution requires in determining who is a public official, however, states can be less restrictive. Therefore, states can reach lower into the governmental hierarchy than that which is required by the United States Constitution and lesser officers or employees can be designated "public officials."

So long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood which injures a private individual and whose substance makes substantial danger to reputation apparent. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

The leading case in this jurisdiction is *Press, Inc. v. Verran,* 569 S.W.2d 435 (Tenn. 1978). In *Verran,* the Supreme Court in holding that a junior social worker was a public official noted:

> While the law of libel has now been federalized, or at least constitutionalized in substantial part under the federal constitution, we consider the provisions of Tennessee's constitution to be both relevant and significant. Section 19, Article I reads, in pertinent part:
>
> > That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty.
>
> To the extent of this controversy this is a substantially stronger provision than that contained in the First Amendment to the Federal Constitution ("Congress shall make no law ... abridging the freedom ... of the press") in that it is clear and certain, leaving nothing to conjecture and requiring no interpretation, construction or clarification.
>
> This mandate of Tennessee's Constitution requires that any infringement upon the "free communication of thoughts" and

any stumbling block to the complete freedom of the press "to examine [and publish] the proceedings ... of any branch or officer of the government" is regarded as constitutionally suspect, and at the very threshold there is a presumption against the validity of any such impediment.

But it does not constitutionalize false and malicious defamations, and publishers are answerable for abuse. We equate "abuse of that liberty," as used in our constitution, with the phrase "actual malice" as used in *New York Times*.

569 S.W.2d 435, 441.

*Verran* is further instructive:

While the term "public official" has not been defined with precision, it causes us no particular concern. Generally the title and nature of the office will provide the answer. However, we find nothing magical, mysterious or mystical in the terminology. The occupant of any position in any branch of government who exercises any public function is subject to the New York Times rule as to all conduct in his official capacity or as to any conduct that might adversely affect his fitness for public office, if he has or "[appears] to the public to have, substantial responsibilities for or control over the conduct of governmental affairs." *Rosenblatt*, supra.

This does not necessarily apply only to high public position. Any position of employment that carries with it duties and responsibilities affecting the lives, liberty, money or property of a citizen or that may enhance or disrupt his enjoyment of life, his peace and tranquility, or that of his family, is a public office within the meaning of the constitutional privilege.

569 S.W.2d 435, 441.

There is other authority in Tennessee which we find persuasive. *See Ferguson v. Union City Daily Messenger, Inc.*, 845 S.W.2d 162 (Tenn.1992), in which the court held a county purchasing agent to be a public official; *Moore v. Bailey*, 628 S.W.2d 431 (Tenn.App.1981) in which a county environmentalist for the State department of Health was found to be a public official; and *Lyons v. State*, 1993 WL 414840 an unreported opinion from this court filed at Nashville, October 20, 1993, in which a corrections officer was likewise found to be a public official. In *Junior–Spence v. Keenan*, 1990 WL 17241, an unreported opinion of this court, filed at Nashville, February 28, 1990, the court addressed the issue of whether the principal of a high school was a public official. The court answered in the affirmative stating: [3]

Although there are no Tennessee cases involving principals or teachers, the reasoning of the *Verran* case applies to Dr. Samella Junior–Spence who was, to the students and parents she dealt with, an authority figure and a government representative. Moreover, her actions affect the taxpayers in Tennessee.

■ In our view, the above statement can be applied equally to a public school teacher. Therefore, we concur with the findings of the trial courts that the plaintiff is a public official.

The second issue requires an examination of plaintiff's complaint as amended to determine whether it contains sufficient allegations to state a cause of action against a public official. In his complaint, the plaintiff generally alleges the statements which he attributes to the various defendants. Otherwise, the complaints in these two consolidated cases are identical. The sole allegations in each complaint attempting to allege actual malice or reckless disregard of the truth or falsity of the statements attributed to the defendants are:

Defendants published the above mentioned defamatory statements with reckless disregard for the truth of the infor-

---

**3.** We should note that our Supreme Court in *Verran*, expressly adopted Section 580A, Restatement (Second) of Torts (1977) as the standard for judging the defamation of a public official. That standard is as follows:

§ 580A. Defamation of Public Official or Public Figure. One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other person, or

(b) acts in reckless disregard of these matters.

mation published, and/or negligently, by failing to check original arrest and court records and Tennessee Code Annotated.

 Plaintiff argues in his brief, without supporting authority, that the above allegations state a cause of action against a public official because the defendants in failing to investigate the truth or falsity of the statements alleged to be defamatory, prior to publication, constitutes reckless disregard for the truth or falsity of the statements. We respectfully disagree.

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 at 332, 94 S.Ct. 2997 at 3003, 41 L.Ed.2d 789, it was expressly held that the "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth. Rather, the publisher must act with a 'high degree of awareness of ... probable falsity.'" (Ellipses in original and citations are omitted). Plaintiff's complaints fail to allege any facts which would tend to show that the publishers of the statements alleged to be false, had any knowledge of probable falsity. The complaints allege that "[t]here were no reasonable grounds for believing that the misstatements of fact ... were true." Hence, under the teachings of *Gertz*, assuming the allegations of the plaintiff, without more, were true, the plaintiff would not be entitled to a judgment against the defendants.[4]

We recognize that with the adoption of the Tennessee Rules of Civil Procedure, effective January 1, 1971, the requirements of pleading were greatly relaxed. "The Tennessee Rules of Civil Procedure, while simplifying and liberalizing pleading, do not relieve the plaintiff in a tort action of the burden of averring facts sufficient to show the existence of a duty owed by the defendant, a breach of the duty, and damages resulting therefrom." *Swallows v. Western Electric Co.*, 543 S.W.2d 581 (Tenn.1976). We are of the opinion that plaintiff's complaints fail to meet the requirements of Rule 8, Tennessee

Rules of Civil Procedure and *Swallows*, supra.

We affirm the actions of the trial courts in dismissing both cases. Costs of this appeal are taxed to the plaintiff and these cases are remanded to the trial court.

GODDARD, P.J., and FRANKS, J., concur.

---

4. Interestingly, in *Gertz*, the defendant implied that the plaintiff had a criminal record. The implication was false. Here, the plaintiff complains of statements stating or implying that he had a criminal record. The statements and implications were also false. Further, in *Gertz*, the defendant published a picture of the plaintiff with a caption which plaintiff deemed to be defamatory. Here we have a similar situation. The defendants published a picture of the plaintiff which the plaintiff claims to be defamatory.