## IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

**FILED**

**January 7, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **MILDRED JOHNSON and** | ) | Davidson County Circuit Court |
| **GARY JOHNSON**, | ) | No. 97C-55 |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9712-CV-00690 |
|  | ) |  |
| **CHARLES T. CANTRELL and** | ) |  |
| **PATRICIA CANTRELL,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Barbara N. Haynes, Judge**

**J. Mitchell Grissim, Jr.**,
**Harry L. Weddle, III**,
MITCH GRISSIM & ASSOCIATES, Nashville, Tennessee
Attorneys for Plaintiffs/Appellants.


**Hal D. Hardin**,
**John T. Reese,**
EVANS, TODD & FLOYD, PLC, Nashville, Tennessee
Attorneys for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiffs Mildred and Gary Johnson appeal an order of the trial court granting summary judgment in favor of Defendants Charles T. and Patricia Cantrell. For the reasons set forth below, we affirm the trial court's ruling.

*Factual and Procedural History*

Charles R. Cantrell and his brother owned a business and some real property. In 1992, the brothers sold their business and began renting their real property to Rocket Express, Inc. (Rocket Express). Rocket Express owned an entity known as Red Arrow Delivery Service Co., Inc. (Red Arrow). Mildred Johnson was employed by Red Arrow as a human resources director. In February of 1996, Red Arrow was in the process of closing its operations. Mr. Cantrell became concerned that equipment was being removed from the building that he rented to Red Arrow in order to defeat Mr. Cantrell's rights as a creditor. Consequently, Mr. Cantrell obtained a temporary restraining order prohibiting Red Arrow, Rocket Express, and any of their agents or employees from removing from the state any personal property located in the building owned by Mr. Cantrell. Mr. Cantrell and his attorney went to Red Arrow on the evening of February 27, 1996 and served a copy of the temporary restraining order on Ed Andrews, the president of Red Arrow. Mr. Cantrell and Mr. Andrews engaged in a heated argument, during the course of which Mr. Cantrell threatened to call the police and have the building locked up. The following morning, Mr. Cantrell returned to Red Arrow, accompanied by his wife. Ms. Johnson overheard Mr. Cantrell ask whether the police had arrived yet. Mr. Cantrell asked Nancy Alverson, one of Ms. Johnson's co-workers, who she worked for and Ms. Alverson replied that she worked for Red Arrow. Mr. Cantrell asked where Mr. Andrews was and was told that Mr. Andrews had locked himself in his office. Mr. and Mrs. Cantrell then entered Ms. Johnson's office and asked her who she worked for. Like Ms. Alverson, Ms. Johnson replied that she worked for Red Arrow. Mr. Cantrell continued to question Ms. Johnson, asking her what she was doing. Ms. Johnson began to cry. At Mr. Cantrell's request, Ms. Johnson showed him which checks she intended to use to complete the payroll for Red Arrow's employees. Mrs. Cantrell then leaned into Ms. Johnson's face and asked if Ms. Johnson knew what she and her husband had been through. Mr. Cantrell also asked Ms. Johnson who was going to sign the checks. Ms. Johnson started to hyperventilate and subsequently fainted. Mr. and Mrs. Cantrell temporarily left Ms. Johnson's office but then re-entered the room after Ms. Johnson regained consciousness.

Thereafter, Ms. Johnson began to hyperventilate again and passed out a second time. She awoke in the hospital and was told that she had suffered a mini stroke. For approximately nine months following this incident, Ms. Johnson underwent speech therapy to treat her loss of speech and physical therapy in order to regain the use of her right side.

On January 6, 1997, Mildred and Gary Johnson filed a complaint against Charles R. and Patricia Cantrell, seeking damages for personal injuries sustained by Ms. Johnson as a result of the events of February 28, 1996. Mr. Johnson sued for loss of consortium. On August 1, 1997, the Defendants filed a motion for summary judgment, accompanied by the affidavits of Charles R. Cantrell and Nancy Alverson. On September 2, 1997, the Plaintiffs filed a response in opposition to the motion for summary judgment, accompanied by the affidavits of Kathye Beech, Tom Caldwell, and Jennifer Duncan. The Defendants filed a statement of undisputed facts on September 29, 1997. Thereafter on October 2, 1997, the Defendants filed a motion to strike the affidavits of Kathye Beech, Tom Caldwell, and Jennifer Duncan, alleging that they had not been properly notarized. The trial court granted the Defendant's motion to strike but allowed the Plaintiffs to reexecute and refile the affidavits of Ms. Beech, Mr. Caldwell, and Ms. Duncan. Additionally, the Plaintiffs filed the affidavit of Mike Chilcoat and the deposition of Mildred Johnson. Finally, on October 9, 1997, the Plaintiffs filed a response to the Defendants' statement of undisputed facts. After a hearing, the trial court initially took the matter under advisement and on November 5, 1997, entered an order granting the Defendants' motion for summary judgment. This appeal followed.

*Issues*

The issues presented on appeal, as we perceive them, are as follows: (1) Did the trial court err in granting summary judgment in favor of the Defendants with respect to the Plaintiffs' claims based on assault? (2) Did the trial court err in granting summary judgment in favor of the Defendants with respect to the Plaintiffs' claim based on intentional infliction of emotional distress? (3) Does the Plaintiffs' complaint allege negligence as a theory of recovery, and, if so, does the proof relied upon by the Plaintiffs state a prima facie case of negligence?

*Standard of Review*

Summary judgment is appropriate only if the party seeking summary judgment demonstrates that there are no genuine issues of material fact and further shows that, under the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 528 (Tenn. 1998)(citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of the nonmoving party and discarding all countervailing evidence. *See id.* at 529 (citing *Byrd*, 847 S.W.2d at 210-11). If there is a dispute as to any material fact or any doubt as to the conclusion to be drawn from the evidence, the motion must be denied. *See Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. App. 1990)(citing *Phillips v. Pittsburg Consol. Coal Co.*, 541 S.W.2d 411, 413 (Tenn. 1976)). Because this is solely a legal determination, our review of the trial court's ruling on a motion for summary judgment is *de novo* with no presumption of correctness. *See White*, 975 S.W.2d at 528-29 (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); T.R.A.P. 13(d).

### *Assault*

In Tennessee, the tort of assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson County*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997); *Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133, at *3 (Tenn. App. Sept. 6, 1996); *Huffman v. State*, 292 S.W.2d 738, 742 (Tenn. 1956), *overruled in part on other grounds by State v. Irvin,* 603 S.W.2d 121, 123 (Tenn. 1980). Under this definition, a defendant is not subject to liability for assault unless he or she commits an intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff. *See Baker v. Moreland*, No. 89-62-II, 1989 WL 89758, at *6 (Tenn. App. Aug. 9, 1989)(citing 6A C.J.S. *Assault & Battery* § 65 (1975)).

In the instant case, the trial court found that the Defendants were entitled to a judgment as a matter of law with respect to the Plaintiffs' claim based on the theory of assault. In their complaint, the Plaintiffs allege in pertinent part as follows:

5.    On that date, while on the Rocket Express Terminal Property, both Defendants came in to the area of the office where the Plaintiff Mildred Johnson was working.  Plaintiffs allege that the Defendants entered the office area where the Plaintiff was working and without provocation, began shouting, cursing and otherwise verbally assaulting Rocket Express office personnel in the area, including the Plaintiff Mildred Johnson.  Plaintiffs further allege that on that occasion, the Defendants threatened to have Rocket Express office personnel, including Plaintiff Mildred Johnson arrested and forcefully removed from the property.

6.  On the same date, and sometime after entering the office area, the Defendants went to Plaintiff Mildred Johnson's work area, and stood next to Plaintiff's desk, in close proximity to the Plaintiff, and began screaming and shouting at the Plaintiff Mildred Johnson in a loud and abusive manner.

7.  As a result of the Defendant's abusive verbal assaults directed at her, the Plaintiff Mildred Johnson became upset and began openly weeping and crying.  Notwithstanding the Plaintiff's obvious anxiety and fright resulting from the Defendant's actions, the Defendant Charles Cantrell continued his angry verbal assault and abuse of the Plaintiff for several more minutes while standing next to the Plaintiff's desk and in close proximity to the Plaintiff with his fists clenched in a threatening manner.

8.  Plaintiffs allege that, despite Plaintiff's obvious anxiety and fright resulting from Defendant's actions, the Defendant Charles Cantrell continued to threaten to have everyone in the office, including the Plaintiff, arrested and forcefully removed from the premises.

9.  All of the actions of the Defendants as described herein above were done without any provocation from the Plaintiff Mildred Johnson.

10.    During the time that the Defendants were verbally assaulting and abusing, the Plaintiff continued to cry and weep so heavily that other personnel in the office asked the Defendants repeatedly to leave the premises and to cease their assault and abuse of the Plaintiff.  Notwithstanding those requests, the Defendants momentarily left the scene and then returned and continued their angry and abusive verbal assault upon the Plaintiff.

11.  On the same date, and as a result of the Defendant's abusive verbal assault upon the Plaintiff, the Plaintiff suffered a massive stroke which has caused her to have a substantial, permanent physical and mental disability.

12.  The Defendants are guilty of assaulting the Plaintiff as described above in that the defendants purposefully and intentionally caused the Plaintiff to be placed in a reasonable apprehension of an imminent threat of harmful or offensive contact with Plaintiff's person.

The Plaintiffs thus contend that Mr. Cantrell committed two acts constituting an assault.  First, they allege that Mr. Cantrell threatened to have Ms. Johnson arrested, causing her to fear that Mr. Cantrell would carry out this threat.  Additionally, they contend that, because Mr. Cantrell shouted at Ms. Johnson in a loud and abusive manner, she believed that she was in imminent physical danger.  We address each of these acts separately.

Ms. Johnson testified that, on at least one occasion, Mr. Cantrell threatened to call the police and have Ms. Johnson and her co-workers removed from the building. Ms. Johnson further testified that she thought that Mr. Cantrell was going to have her arrested for trespassing, stating "in the back of my mind the whole time I was thinking, oh, God, he's going to have me arrested." When Ms. Johnson regained consciousness after fainting, her first words were that Mr. Cantrell was calling the police and that she was going to be arrested. In order to recover under the theory of assault, a plaintiff must prove that, as a result of the defendant's actions, he or she was placed in apprehension of immediate or imminent harm. *See Vafaie*, 1996 WL 502133 at \*4; *see also Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995)(holding that threat of future violence was not suggestive of an immediate harm; thus, plaintiff did not allege facts sufficient to maintain an action for assault). In the instant case, Mr. Cantrell threatened to call the police in the future. Likewise, Ms. Johnson feared that Mr. Cantrell might call the police and have her arrested in the future. Thus, the Plaintiffs' complaint alleges that Mr. Cantrell's threat placed Ms. Johnson in apprehension of future rather than immediate or imminent harm. Accordingly, we find that this allegation is insufficient to state a claim for relief under the theory of assault.

The Plaintiffs also allege that Ms. Johnson was "verbally assaulted" by the Defendants. Specifically, Ms. Johnson testified that Mr. Cantrell questioned her in a loud and angry manner, cursing at her and using profane and offensive language in her presence. It is well established that an assault cannot be committed by words alone, no matter how insulting, offensive, or abusive those words might be. *See Baker*, 1989 WL 89758, at \*6 (citing 6A C.J.S. *Assault & Battery* § 66 (1975)). Rather, the words must be accompanied by an overt act or physical movement causing the plaintiff to reasonably believe that he or she is in imminent physical danger. *Id.* In the instant case, Tommy Caldwell, one of Ms. Johnson's co-workers who witnessed the incident, testified that he saw Mr. Cantrell running his hands in and out of his right hand pocket and thought that Mr. Cantrell might have a gun or a weapon. Mr. Caldwell further testified that, during Mr. Cantrell's interrogation of Ms. Johnson, he made threatening motions toward Ms. Johnson with his hands. Mike Chilcoat, a second eyewitness, testified that Mr. Cantrell was intimidating Ms. Johnson through his angry manner and gestures and that, when Ms. Johnson regained consciousness, she

stated that she thought Mr. Cantrell was going to shoot her.[1]  These witnesses did not, however, set forth specific facts describing these allegedly threatening motions and gestures.  Nor can we find any evidence in the record showing that Ms. Johnson actually observed any threatening motions or gestures.  In her deposition testimony, Ms. Johnson recounted in great detail the events of February 28, 1996.  At no time during this testimony did Ms. Johnson state that Mr. or Mrs. Cantrell made any threatening motions or gestures toward her.  She also did not allege that she feared that Mr. Cantrell was going to shoot her.  Thus, we must find that the Plaintiffs have failed to allege that either of the Defendants committed an act sufficient to create a cause of action for assault of which Ms. Johnson was aware.

Accordingly, with respect to the Plaintiffs' claims based on the theory of assault, we uphold the trial court's order granting summary judgment in favor of the Defendants.

### *Intentional Infliction of Emotional Distress*

The Plaintiffs' complaint alleges that the "Defendants are further guilty, as described herein above, of extreme and outrageous conduct, in that Defendants recklessly or intentionally caused severe emotional distress to the Plaintiff which resulted in mental and physical harm, injury and disability."  We perceive this as an attempt to allege intentional infliction of emotional distress as a theory of recovery.  *See Bain*, 936 S.W.2d at 622 n.3 (citing *Moorhead v. J.C. Penney Co.*, 555 S.W.2d 713, 717 (Tenn. 1977))(stating that outrageous conduct and intentional infliction of emotional distress are different names for the same cause of action).  In order to recover under this theory, a plaintiff must prove (1) that the defendant engaged in intentional or reckless conduct, (2) that the defendant's conduct is so outrageous that is not tolerated by civilized society, and (3) that, as a result of the defendant's conduct, the plaintiff has suffered a serious mental injury.  *See id.* at 622; *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 98 (Tenn. App. 1995); *Hartsell v. Fort Sanders Regional Medical Ctr.*, 905 S.W.2d 944, 948 (Tenn. App. 1995).

In determining whether conduct may properly be described as outrageous, we are

---

[1]There is no evidence in this record that Mr. Cantrell was armed.

guided by the Restatement (Second) of Torts which provides in pertinent part as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Restatement (Second) of Torts § 46 cmt. d; *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 266 (6th Cir. 1991); *Bain*, 936 S.W.2d at 623; *Newsom*, 924 S.W.2d at 98; *Fann v. City of Fairview*, 905 S.W.2d 167, 175 (Tenn. App. 1994). Under this high standard, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not classified as outrageous. *Jones*, 948 F.2d at 266; *Bain*, 936 S.W.2d at 622; *Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976); *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966).

In the instant case, even if we assume that the evidence submitted by the Plaintiffs is true, as we must for purposes of summary judgment, we nevertheless find that the Plaintiffs do not state a claim for intentional infliction of emotional distress. The Plaintiffs allege that Mr. Cantrell shouted at Ms. Johnson in a loud and abusive manner, using offensive and profane language and that he threatened to have her arrested. The Plaintiffs further allege that Mrs. Cantrell leaned into Ms. Johnson's face and stated, "[y]ou don't know what all we've been through!" According to Ms. Johnson, the entire incident lasted only about ten minutes. This conduct was obviously upsetting to Ms. Johnson and may be classified as rude, offensive, and otherwise inappropriate. Under the standard recognized in Tennessee, however, it may not be said, and a reasonable jury could not find, that the conduct was outrageous. Because the Plaintiffs have failed to allege any outrageous conduct on the part of the Defendants, we conclude that the trial court properly granted summary judgment in favor of the Defendants with respect to the Plaintiffs' claim for intentional infliction of emotional distress.

***Negligence***

On appeal, the Plaintiffs contend that there is a genuine issue of material fact regarding "whether the Defendants were negligent in failing to exercise reasonable care to avoid injury to Millie Johnson." The Plaintiffs complaint, however, does not allege negligence as a theory of recovery.[2] It also does not appear that the theory of negligence was considered by either party or the trial judge in the context of the Defendants' motion for summary judgment. During oral argument on the motion for summary judgment, counsel for the Defendants stated, "If it please the Court, this is a complaint which alleges two counts. The first count is abusive verbal assault; the second count is outrageous conduct." Counsel for the Plaintiffs had an opportunity to refute this statement but did not do so. At no time during oral argument on the motion for summary judgment did either party discuss any factual issues relating to the breach of a duty owed to the Plaintiffs by the Defendants. Thus, we must conclude that the trial court did not consider the theory of negligence when ruling on the Defendants' motion for summary judgment.

The Plaintiffs argue that the averments contained in their complaint are sufficient to set forth a claim based on the theory of negligence. Under the liberal pleading standards of Tennessee Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." T.R.C.P. 8.01. A complaint states a claim upon which relief may be granted if it alleges facts supporting any theory of relief, even one different from the theory relied upon by the plaintiff. *See* Lawrence A. Pivnick, Tennessee Circuit Court Practice § 7-2 (1998 ed.)(citations omitted). Recognizing this relaxed rule, we recently held that a plaintiff in a tort action still has the burden of alleging facts showing the existence of a duty owed by the

---

[2]We note, however, that Legion Insurance Company (Legion Insurance) filed an intervening complaint seeking to recover workers compensation benefits paid to Ms. Johnson stating in pertinent part as follows:

> 6. The defendants are guilty of negligence, in that they failed to exercise reasonable care and diligence in their actions to avoid injury to Mildred Johnson.

> 7. The defendant, Charles T. Cantrell, owed a duty to Mildred Johnson not to wilfully injure her on the premises at 500 Maple Leaf Drive, Nashville, Tennessee. Charles Cantrell is guilty of negligence for breach of that duty.

Legion Insurance has not appealed the ruling of the trial court or been made a party to this appeal. We thus conclude that the allegations of Legion Insurance may not be relied upon on appeal by the Plaintiffs.

defendant to the plaintiff, a breach of that duty, and damages resulting from the breach of duty. ***See Campbell v. Robinson***, 955 S.W.2d 609, 613 (Tenn. App. 1997)(citing ***Swallows***, 543 S.W.2d at 583). This requirement is consistent with the function of pleadings, which is to give notice to the opposing party of the issues and claims to be tried. ***See, e.g., Castelli v. Lien***, 910 S.W.2d 420, 429 (Tenn. App. 1995)("Providing this notice assists the parties in preparing for trial and also assists the trial court in focusing on the matters that are at issue. The failure to assert a claim or defense in a timely manner is generally deemed to amount to a waiver of the right to rely on the claim at trial.")(citations omitted). In the instant case, we find that the Plaintiffs have not alleged facts establishing that they were owed any duty by the defendants. Thus, we must conclude that the Plaintiffs' complaint does not state a claim under the theory of negligence.

As a general rule, when an issue or claim is not raised in the pleadings and is not argued at the trial court level, it is waived. ***See, e.g., Civil Serv. Merit Bd. v. Burson***, 816 S.W.2d 725, 734-35 (Tenn. 1991); ***State Dep't of Human Servs. v. Defriece***, 937 S.W.2d 954, 960 (Tenn. App. 1996). The Plaintiffs' claim based on the theory of negligence was raised for the first time on appeal. Thus, we find that the Plaintiffs' attempt to assert a negligence claim is untimely.

### *Conclusion*

Based on the foregoing, we hold that the trial court properly granted summary judgment in favor of the Defendants. The ruling of the trial court is thus affirmed. Costs of this appeal are assessed against the appellants, Mr. and Mrs. Johnson, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)