IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 4, 2019 Session

**NEDRA FINNEY v. MILES JEFFERSON ET AL.**

**Appeal from the Circuit Court for Williamson County**
**No. 2017-125        Deanna Bell Johnson, Judge**

_____

**No. M2019-00326-COA-R3-CV**

_____

In a letter sent to high-ranking school officials, parents claimed that a special education teacher had denied their child an appropriate education based on the child's needs and improperly used physical restraints on the child. The parents also claimed that the teacher had ignored them at a school event and did not communicate with them for a month afterward. The teacher sued the parents for defamation. The trial court granted summary judgment to the parents, reasoning primarily that the parents had not published the letter. The court also reasoned that the statements in the letter were not defamatory and that the parents did not act with actual malice. We conclude that some of the statements in the letter were not defamatory but others were capable of being understood as defamatory. For those statements capable of conveying a defamatory meaning, the record lacked evidence of actual malice. So we affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined. RICHARD H. DINKINS, J., not participating.

J. Michael Clemons, Nashville, Tennessee, and Jonathan Turner, Franklin, Tennessee, for the appellant, Nedra Finney.

James R. Tomkins, Nashville, Tennessee, and Dana C. McLendon, Franklin, Tennessee, for the appellees, Kimberly Jefferson and Miles Jefferson.

# OPINION

## I.

Nedra Finney was a public school, special education teacher. Concerned with Ms. Finney's treatment of their child, Kimberly and Miles Jefferson sent a letter to the school's principal and special education supervisor, as well as the school district director. In the letter, the Jeffersons claimed that Ms. Finney had ignored them at a reading night and did not communicate with them for a month. More concerning, the Jeffersons also claimed that Ms. Finney violated their child's education plan by denying the child access to general education and using physical restraints on the child. Ms. Finney was terminated months later.

After her termination, Ms. Finney sued the Jeffersons for defamation based on their letter. The Jeffersons moved for summary judgment. In support of their motion, the Jeffersons argued that the statements in the letter were not false or defamatory as a matter of law. The Jeffersons also argued that there was no evidence in the record that they acted with actual malice or that Ms. Finney suffered damages. Ms. Finney responded that the statements in the letter were false and at least capable of being understood as defamatory, meaning the defamatory nature of the statements was a question for the jury. She also argued that there were genuine issues of material fact as to the questions of actual malice and damages.

The trial court scheduled a hearing on the Jeffersons' motion. Neither the Jeffersons nor Ms. Finney addressed the issue of publication in their summary judgment filings. But the trial court requested that the parties be prepared to discuss publication at the hearing. After the hearing, the trial court granted the Jeffersons' motion for summary judgment. The court's principal reasoning was that the Jeffersons did not "publish" the letter within its meaning as a legal term of art. The Jeffersons sent the letter only to school officials who were in the "need to know chain of command." The trial court reasoned, in the alternative, that the statements in the letter were not defamatory as a matter of law and that Ms. Finney did not show a genuine issue of material fact as to the element of actual malice. The trial court did not reach the issue of damages.

## II.

### A.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at

2

763. Thus, we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A Rule 56 motion "addresses . . . the merits of the litigation." *Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 328 (Tenn. Ct. App. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In reviewing the record, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). We will uphold the trial court's decision only if the undisputed facts show that the moving party was entitled to judgment as a matter of law. *White v. Lawrence*, 975 S.W.2d 525, 528 (Tenn. 1998).

Summary judgment is "particularly well-suited" for defamation claims because "whether the plaintiff is a public figure" and "whether a public figure has come forward with clear and convincing evidence that the defendant was acting with actual malice" are questions of law. *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 283 (Tenn. Ct. App. 2007). A public figure "cannot resist a . . . motion for summary judgment under Rule 56 by arguing that there is an issue for the jury as to malice unless he makes some showing, of the kind contemplated by the Rules, of facts from which malice may be inferred." *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69, 74 (Tenn. Ct. App. 1986) (citation omitted). Thus, on review, "we must 'determine, not whether there is material evidence in the record supporting [the plaintiff], but whether or not the record discloses clear and convincing evidence upon which a trier of fact could find actual malice.'" *Lewis*, 238 S.W.3d at 283 (alteration in original) (quoting *Piper v. Mize*, No. M2002-00626-COA-R3-CV, 2003 WL 21338696, at *7 (Tenn. Ct. App. June 10, 2003)).

B.

In Tennessee, a plaintiff in a defamation case must prove that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). But when the plaintiff is a public figure or public official, the plaintiff cannot rely on the negligence standard. Instead, a public figure or public official must prove that the defendant published the allegedly defamatory statement with "actual malice." *Lewis*, 238 S.W.3d at 289-90 (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 148 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). To publish a statement with "actual malice," a defendant must act "'with knowledge that [a statement] was false or with reckless disregard of whether it was false or not.'" *Funk v.*

3

*Scripps Media, Inc.*, 570 S.W.3d 205, 212 (Tenn. 2019) (alteration in original) (quoting *New York Times v. Sullivan*, 376 U.S. at 280).

Ms. Finney makes three arguments in support of her position that the trial court erred in granting summary judgment to the Jeffersons on her defamation claim. First, she argues that the statements in the letter were at least capable of being understood as defamatory. As such, she argues, the question of whether the statements were actually understood in a defamatory sense is a question for the jury. Second, Ms. Finney argues that the trial court disregarded the evidence she brought forth when it concluded that the Jeffersons did not act with actual malice as a matter of law. She concedes that the actual malice standard applies because, as a public school teacher, Ms. Finney was a public official at the time the Jeffersons sent the letter. *See Campbell v. Robinson*, 955 S.W.2d 609, 611 (Tenn. Ct. App. 1997) (holding, as a matter of first impression, that public school teachers are public officials).[1] Third, Ms. Finney argues that the trial court improperly raised the publication issue after the Jeffersons did not raise it. Even so, she argues, the Jeffersons did not successfully negate the element of publication. We begin with whether the trial court properly concluded that the statements in the letter were not defamatory as a matter of law.

1. Defamatory Nature

Whether a statement "was, in fact, understood by readers in its defamatory sense is ultimately a question for the jury." *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978). But, as an initial matter, whether a statement "is capable of conveying a defamatory meaning is a question of law," which we review de novo. *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000) (citing *Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 574 (Tenn. Ct. App. 1996)). A statement is incapable of conveying a defamatory meaning as a matter of law if "'the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense.'" *Aegis Scis.*

---

[1] In concluding that a teacher was a public official, we acknowledged a "wide split of authority . . . regarding the question of whether a public school teacher is a public official." *Campbell*, 955 S.W.2d at 610. Along with Tennessee, states that hold that public school teachers are public officials include Arizona, Connecticut, Ohio, Oklahoma, and Washington. *See Sewell v. Brookbank*, 581 P.2d 267, 270 (Ariz. Ct. App. 1978); *Kelley v. Bonney*, 606 A.2d 693, 710 (Conn. 1992); *Bowman v. Parma Bd. of Educ.*, 542 N.E.2d 663, 668 (Ohio Ct. App. 1988); *Johnston v. Corinthian Television Corp.*, 583 P.2d 1101, 1102 (Okla. 1978); *Corbally v. Kennewick Sch. Dist.*, 973 P.2d 1074, 1077 (Wash. Ct. App. 1999). States that hold the opposite include California, Florida, Idaho, Maine, New York, Texas, and Virginia. *See Franklin v. Lodge 1108, Benevolent & Protective Order of Elks*, 159 Cal. Rptr. 131, 135 (Cal. Ct. App. 1979); *Nodar v. Galbreath*, 462 So. 2d 803, 808 (Fla. 1984); *Verity v. USA Today*, 436 P.3d 653, 663 (Idaho 2019); *True v. Ladner*, 513 A.2d 257, 264 (Me. 1986), *superseded by statute on other grounds*, 14 ME. REV. STAT. ANN. tit. 14 § 8111 (West, Westlaw through 2019 Reg. Sess.), *as recognized in Grossman v. Richards*, 722 A.2d 371, 373 (Me. 1999); *Dec v. Auburn Enlarged Sch. Dist.*, 672 N.Y.S.2d 591, 593 (N.Y. App. Div. 1998); *Poe v. San Antonio Express-News Corp.*, 590 S.W.2d 537, 540 (Tex. Civ. App. 1979); *Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 37 (Va. 1987).

*Corp. v. Zelenik*, No. M2012-00898-COA-R3-CV, 2013 WL 175807, at *6 (Tenn. Ct. App. Jan. 16, 2013) (quoting *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005)).

A statement is defamatory if it "constitute[s] a serious threat to the plaintiff's reputation." *Revis*, 31 S.W.3d at 252-53 (citation omitted); *see Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994) ("The basis for an action for defamation . . . is that the defamation has resulted in an injury to the person's character and reputation."). A statement is not defamatory "simply because [the plaintiff] finds the publication annoying, offensive or embarrassing." *Revis*, 31 S.W.3d at 253 (citation omitted). The statement "must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule." *Id.* There must be "an element 'of disgrace.'" *Id.* The statement must "'tend[] so to harm the reputation of another as to lower him . . . in the estimation of the community or to deter third persons from associating or dealing with him.'" *Grant v. Commercial Appeal*, No. W2015-00208-COA-R3-CV, 2015 WL 5772524, at *9 (Tenn. Ct. App. Sept. 18, 2015) (quoting *Aegis Scis. Corp.*, 2013 WL 175807, at *5).

In determining "whether a statement is capable of being defamatory, it must be judged within the context it is made." *Id.* at *10 (citing *Revis*, 31 S.W.3d at 253). And statements "should be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances." *Revis*, 31 S.W.3d at 253 (citing *Pate*, 959 S.W.2d at 574). To that end, "courts are not bound to the plaintiff's interpretation of the allegedly defamatory material, and if the words 'do not reasonably have the meaning [the] plaintiff ascribes to them, the court must disregard' [the] plaintiff's interpretation." *Grant*, 2015 WL 5772524, at *10 (quoting *Stones River Motors, Inc. v. Mid-S. Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983), *abrogation on other grounds recognized in Zius v. Shelton*, No. E1999-01157-COA-R3-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000)).

Calling a public figure "rude" or "extremely rude" is not defamatory as a matter of law. *See Grubb v. Prince*, 1986 WL 4489, at *1 (Tenn. Ct. App. Apr. 14, 1986) (holding that a judge's comments that a department of human services director "would not listen to him, argued with him, interrupted him and would not let him finish his sentences" were not defamatory as a matter of law). Here, in their letter, the Jeffersons claimed that Ms. Finney ignored Ms. Jefferson and her child at a reading night: "For the entire time we attempted to speak to [Ms. Finney], she disregarded us and worked silently on her computer." Ms. Finney then also allegedly did not communicate with the Jeffersons for about a month.

We agree with the trial court that these statements are not defamatory as a matter of law. The essence of these statements here is, at worst, "that [Ms. Finney] was extremely rude." *See Grubb*, 1986 WL 4489, at *1.

5

Ms. Finney may believe that allegations of ignoring Ms. Jefferson and her child and not communicating with the Jeffersons for about a month are a serious threat to her reputation as a teacher. But that would not be a reasonable interpretation. The "'plain and natural import'" of these statements is that Ms. Finney perhaps lacked social grace and was responsible for a slight communication breakdown. *See McWhorter v. Barre*, 132 S.W.3d 354, 365 (Tenn. Ct. App. 2003) (quoting *Memphis Publ'g Co.*, 569 S.W.2d at 419 n.7). Even if Ms. Finney singled out the Jeffersons, accusations of minor lapses in people skills—while "annoying, offensive or embarrassing"—do not "carry with them an element 'of disgrace.'" *See Revis*, 31 S.W.3d at 253 (citation omitted). Nor are they "reasonably . . . construable as holding [Ms. Finney] up to public hatred, contempt or ridicule." *See id.*; *cf. High v. Supreme Lodge of the World, Loyal Order of Moose*, 7 N.W.2d 675, 678 (Minn. 1943) (in the context of defamation, per se allegations of "simple neglect or oversight" are not "susceptible of a meaning imputing lack of general professional ability, skill, and character").[2]

We reach a different conclusion with respect to other statements in the Jeffersons' letter. The Jeffersons claimed that, contrary to their child's education plan, their child had been spending time in Ms. Finney's classroom when the child should have been in a general education setting. And the Jeffersons claimed that Ms. Finney was responsible. Not only that, but Ms. Finney allegedly "prevented [the child's] participation in the general education setting." The Jeffersons also claimed that Ms. Finney used physical restraints on their child in violation of the child's education plan. The Jeffersons "worr[ied]" that Ms. Finney's "frequent, vociferous, and brutal use of intimidation tactics and bullying behaviors have forced others to remain silent."

A fair reading of these statements in context is that Ms. Finney ignored and purposefully violated a special needs student's education plan in multiple respects, interfered with that student's growth and educational development, and used improper physical discipline. These statements are capable of being understood as defamatory. They are reasonably construable as imputing callousness and mistreatment of special needs children to Ms. Finney. If a parent heard these allegations, they may not want Ms. Finney to teach their child. If a school heard these allegations, it may not want to employ

---

[2] Although the claim that Ms. Finney ignored Ms. Jefferson and her child at a reading night was referenced in Ms. Finney's termination letter that does not make the statement actionable. That fact goes to the element of damages, where the question is "'whether the record contains any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering.'" *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 51 (Tenn. Ct. App. 2013) (quoting *Murray v. Lineberry*, 69 S.W.3d 560, 564 (Tenn. Ct. App. 2001)). The damage a statement may have caused is irrelevant when it is not defamatory as a matter of law. *See Coker v. Sundquist*, No. 01A01-9806-BC-00318, 1998 WL 736655, at *4 (Tenn. Ct. App. Oct. 23, 1998) (reasoning that "[t]hese elements of damage may [only] apply if a valid right of action for defamation is shown").

6

Ms. Finney as a teacher. Thus, these statements are capable of "harm[ing] the reputation of [Ms. Finney] as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *See Grant*, 2015 WL 5772524, at *9 (citation omitted).

We conclude, then, that the statements concerning Ms. Finney allegedly ignoring the Jeffersons are not defamatory as a matter of law. But the statements accusing Ms. Finney of depriving the Jeffersons' child of the general education setting and restraining the child are capable of being defamatory. So we consider Ms. Finney's argument that there is a triable issue of fact as to whether the Jeffersons acted with actual malice in accusing Ms. Finney.

2. Actual Malice

Actual malice is a term of art in defamation cases. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 499 (1991). It "should not be confused with the concept of 'malice' that connotes personal ill will, hatred, or spite." *Lewis*, 238 S.W.3d at 300 (citing *Masson*, 501 U.S. at 510; *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997)). "Actual malice" means, instead, that the defendant made the allegedly defamatory statements "with knowledge that they [were] false or with reckless disregard to their truth or falsity." *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (citing *McWhorter*, 132 S.W.3d at 365). Reckless disregard to the truth means that the defendant "'entertained serious doubts as to the truth of [the statements].'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)). This standard "is a subjective one," requiring that the defendant made the statements with a "'high degree of awareness of . . . probable falsity.'" *Id.* at 688 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). In other words, the defendant must have acted with "purposeful avoidance of the truth." *Id.* at 692.

"Failing to investigate information provided by others before publishing it, even when a reasonably prudent person would have done so, is not sufficient by itself to establish reckless disregard." *Lewis*, 238 S.W.3d at 301 (citing *Harte-Hanks*, 491 U.S. at 688; *McCluen v. Roane Cty. Times, Inc.*, 936 S.W.2d 936, 941 (Tenn. Ct. App. 1996)). To prevail on a defamation claim where the actual malice standard applies, the plaintiff "must prove by clear and convincing evidence that [the] defendant acted with actual malice." *See Jones v. State*, 426 S.W.3d 50, 57 (Tenn. 2013) (citing *New York Times v. Sullivan*, 376 U.S. at 285-86).

Here, before sending their letter, the Jeffersons were told by their child's general education teacher that Ms. Finney was holding their child in her classroom when the child was supposed to be in the general education setting. This general education teacher also said that Ms. Finney was doing so in contravention to the child's education plan.

7

The school's special education supervisor told the Jeffersons that Ms. Finney used physical restraint on their child. A school speech pathologist told them that Ms. Finney would use loud alarms to agitate students and that Ms. Finney had agitated their child by pinching and grabbing at the child. A former teaching assistant of Ms. Finney's told the Jeffersons that she quit because Ms. Finney bullied and intimidated her.

Ms. Finney denies the truth of what the school staff members told the Jeffersons. But she does not "set forth specific facts" contradicting the Jeffersons' claim that the statements were made to them. *See* Tenn. R. Civ. P. 56.06 (requiring a party opposing summary judgment by affidavit or otherwise to "set forth specific facts showing that there is a genuine issue for trial"). Instead, she argues that the statements are hearsay and are thus not "such facts as would be admissible in evidence" for purposes of summary judgment. *See id.*; *Shipley v. Williams*, 350 S.W.3d 527, 564-65 & n.12 (Tenn. 2011) (Koch, J., concurring in part and dissenting in part) (recognizing that evidence, including the substance of affidavits, filed in "support or to oppose a motion for summary judgment must be admissible"). We disagree.

A statement can only be hearsay if it is "offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). If a statement is relevant even if it is not true, then it is not offered for its truth. *See Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986) ("'Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply . . . .'" (quoting *Cannon v. Chadwell*, 150 S.W.2d 710, 712 (Tenn. Ct. App. 1940))). One way a statement can be relevant even if it is not true is if it is offered to show how that statement affected the listener's state of mind. *See id.*

The statements by school staff members to the Jeffersons about Ms. Finney's conduct are relevant even if they are not true. What matters for purposes of actual malice—a subjective standard that "focuses on the defendant's state of mind"—is what the Jeffersons thought was true, even if it was not actually true. *See Eisenstein v. WTVF-TV*, No. M2015-00422-COA-R3-CV, 2016 WL 2605752, at *11 n.15 (Tenn. Ct. App. May 3, 2016); *see also Harte-Hanks*, 491 U.S. at 688. The school staff members' statements to the Jeffersons are relevant to the Jeffersons' state of mind regardless of their truth. So those statements are not hearsay.

Not only are those statements not hearsay, but they establish, as a matter of law, that the Jeffersons did not act with actual malice. The Jeffersons stated in their affidavits that, based on their experience, they found the school staff members who told them about Ms. Finney's alleged conduct to be honest people. They had no reason to disbelieve them.

Although Ms. Finney argues that what the Jeffersons believed should not be considered on summary judgment, the actual malice standard in defamation cases

8

depends entirely on the defendant's subjective belief. *See Harte-Hanks*, 491 U.S. at 688. At a trial, the Jeffersons would be allowed to testify as to their understanding of the school staff members' veracity. That understanding, in an affidavit at the summary judgment stage, would thus "be admissible in evidence." *See* Tenn. R. Civ. P. 56.06. And Ms. Finney has not responded with "specific facts showing that there is a genuine issue for trial" on the issue of actual malice. *See id.*

In response to the Jeffersons' motion for summary judgment, Ms. Finney stated that she followed the child's education plan. The Jeffersons only thought she was not following the plan because they were wrong about matters related to the plan. Regardless, Ms. Finney was unaware of any concerns that the plan was not being followed. She would have supported the child spending more time in the general education setting if she knew it was an issue. Ms. Finney also stated that she did not restrain or otherwise physically discipline the child.

We agree with the Jeffersons that these facts, as well as other facts Ms. Finney contends are in dispute, are immaterial. Assuming these facts are true, as we must on review of a motion for summary judgment, they tend to show only that the defamatory statements were false and that the Jeffersons did not investigate issues related to their child's education plan before writing their letter. These facts do not bear on the issue of whether the Jeffersons knew their allegations against Ms. Finney were false or "entertained serious doubts as to the truth" of those allegations. *See Pate*, 959 S.W.2d at 577.

The record here simply does not "disclose[] clear and convincing evidence upon which a trier of fact could find actual malice." *See Lewis*, 238 S.W.3d at 283. So Ms. Finney's claim fails as a matter of law. Because this issue is dispositive, we do not reach the issue of whether the Jeffersons truly "published" the letter within that term's meaning in defamation cases.

### III.

The Jeffersons' statements alleging that Ms. Finney ignored them and did not communicate with them for a month are not defamatory as a matter of law. The Jeffersons' accusations that Ms. Finney restrained their child and denied the child access to the general education setting are capable of being understood as defamatory. But, as a matter of law, the Jeffersons did not act with actual malice when they made those accusations. So we affirm the judgment of the trial court.

_____
W. NEAL MCBRAYER, JUDGE

9