# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

March 13, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

WILLIAM J. REVIS,        )
                             )
     Plaintiff/Appellant,    )
                             )    Appeal No.
                             )    M1999-00658-COA-R3-CV
VS.                      )
                             )    Dickson Circuit
                             )    No. CV-677
GRAHAM J. MCCLEAN,    )
QUEBECOR PRINTING (USA) )
CORP., BILL MAHONEY and )
QUEBECOR PRINTING     )
DICKSON, INC.,           )
                             )
     Defendants/Appellees.  )

## APPEALED FROM THE CIRCUIT COURT OF DICKSON COUNTY
## AT CHARLOTTE, TENNESSEE

## THE HONORABLE ROBERT E. BURCH, JUDGE

ANN BUNTIN STEINER
214 Second Avenue North
Nashville, Tennessee 37201-1644
     Attorney for Plaintiff/Appellant

W. STEPHEN GARDNER
HEATHER R. GUNN
One Commerce Square, Suite 2380
Memphis, Tennessee 38103
     Attorneys for Defendants/Appellees

## AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# **O P I N I O N**

In this defamation action, the appellant filed suit against Quebecor Printing (USA) Corporation, Graham McClean, the President and Chief Operating Officer of the corporation, Quebecor Printing Dickson, Incorporated, and Bill Mahoney, the General Manager of Quebecor Dickson, for alleged defamatory statements made by Mr. McClean at a company meeting and in a letter posted in the Dickson plant. In granting the appellee's motion for summary judgment, the trial court found that the statements were not defamatory as a matter of law and that there was no publication of such statements under the law of defamation. For the reasons stated, we find the statements were not defamatory and affirm the judgment of the trial court.

## I.

William J. Revis worked at the Dickson, Tennessee plant for Quebecor Printing. In 1994, he was one of several employees who helped organize an unsuccessful effort to elect a union at the Dickson plant. In 1995, Mr. Revis was involved in another effort to unionize the plant. During the campaign, McClean organized company meetings with various employees to discuss the issues regarding unionization of the plant and plant productivity. Some of these meetings were one-on-one with employees and some were team meetings attended by large groups of employees. Pamela Brown, a Quebecor employee, testified that at a one-on-one meeting with McClean, McClean stated that there was no room at the plant for someone like Revis. In addition, Robert Brown, another Quebecor employee, testified that at one of the team meetings, McClean stated that there was no room in the plant for Revis' attitude. Witnesses

that attended other team meetings denied that any reference was made to the appellant.

On November 7, 1995, the National Labor Relations Board held the election. As the vote count progressed, it became clear to McClean that the union would lose. As he related the story later to several plant supervisors, McClean looked around the room and made eye contact with Revis. McClean described Revis' facial expression as demeaning, insubordinate, and hostile. Later, McClean composed a letter and allegedly posted it in an area of the plant where it would likely be seen. The letter in relevant part states:

> On Tuesday, November 7, 1995, at approximately 7:30 a.m. to 8:00 a.m., I was in the cafeteria observing the counting of the ballots in the NLRB election. I estimate that thirty to forty employees were present in the cafeteria at this time. I was standing toward the front of the group of employees on the left side of the room (facing the voting area). My attention primarily was focused on the vote count. At one point, I happened to glance around the room at the crowd. My thoughts were on the vote count, but I happened to catch the eye of Mr. Revis. He was staring intently at me with a stern, determined, and angry expression on his face. As soon as he saw that he had made eye contact with me, Mr. Revis proceeded to make an overt, dramatized, facial expression towards me. Mr. Revis made no attempt to hide his facial gesture from the other employees present.
>
> The facial expression Mr. Revis made at me is difficult to describe in words. However, in an effort to communicate what this expression looked like to me, I would describe it as being of a menacing, threatening, denigrating, contemptuous and insubordinate nature. Knowing of Mr. Revis' recent suspension for displaying a "temper" and making abusive and intimidating comments to others, his facial expression immediately caused me to feel concern for my safety, as well as the safety of the others in the room. Moreover, I felt insulted and offended by Mr. Revis' conduct.

After the events described in the letter, the company fired Revis, but the NLRB ordered his reinstatement. Subsequently, he filed this action for defamation.

## II.

Upon review of a grant of summary judgment, this Court must determine whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). As this inquiry involves purely a question of law, our review is de novo without a presumption of correctness. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Summary judgments are appropriate only where there is no genuine issue of material fact relevant to the claim or defense contained in the motion and the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See* Tenn. R. Civ. P. 56.03; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Courts reviewing summary judgments must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In view of these standards, we turn now to the legal principles involved in this appeal.

## III.

With respect to defamatory statements, this Court has previously held that

> For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element "of disgrace."

*Stones River Motors, Inc. v. Mid-South Publishing Co., Inc.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983) (citations omitted). In addition, "the damaging words must be factually false. If the words are true, or essentially true, they are not actionable even though the statement contains other inaccuracies which are not damaging." *Id.* at 719.

Whether a communication is capable of conveying a defamatory meaning is a question of law. *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996). Review by the appellate court of the trial court's determination is de novo. *Baner v. Murphy*, 530 N.W.2d 1 (Wis. App. 1995). Allegedly defamatory statements should be judged within the context in which they are made. *Norse v. Henry Holt & Co.*, 991 F.2d 563 (9th Cir. 1993). They should be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances. *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996); *McKethan v. Texas Farm Bureau*, 996 F.2d 734 (5th Cir. 1993).

Opinions are not automatically protected by the United States Constitution, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), but some states still hold that statements of opinion alone are not actionable. *See* 50 Am. Jur. 2d *Libel and Slander* § 161. The *Restatement* (followed by the Supreme Court in *Milkovich*) position is that an opinion may be actionable if the

communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. *Restatement (2d) of Torts* § 566.

Using these principles, we will examine the statements made by McClean. First, he allegedly told Revis' fellow employees (in the presence of supervisory employees) that there was no room at the plant for someone like Revis or that there was no room at the plant for Revis' attitude. In our opinion, in the context of a union election at a manufacturing plant these words are not actionable. They consist entirely of McClean's opinion about Revis' attitude, and they do not hold Revis up to public hatred, contempt, or ridicule. The other employees would probably applaud Revis' anti-management attitude and rejoice that it had had the desired effect.

Second, McClean allegedly posted the letter stating that Revis had made a menacing, threatening, denigrating, contemptuous, and insubordinate face at him, causing him to fear for his safety and the safety of others. The basis for his concern was Revis' recent suspension for having a temper and making abusive and intimidating comments to others. The description of the look on Revis' face is nothing more than McClean's opinion, and the effect it produced on him is an opinion based on the disclosed non-defamatory fact that Revis had been suspended for threatening and cursing another employee. We hold that as a matter of law the statements in the letter did not seriously threaten Revis' reputation or hold him up to public hatred, contempt, or ridicule.

As we find the statements at issue were not defamatory, we find no need to address the issue of the publication of such statements.

The judgment of the court below is affirmed and the cause remanded to the Circuit Court of Dickson County for any further proceedings necessary. Tax the costs on appeal to the appellant, William J. Revis.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE