IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# SUE ZIUS, vs. SUSAN SHELTON, CHRISTIAN MILLMAN, JOHN DOE and THE BRADLEY COUNTY WEEKLY, INC., a/k/a BRADLEY WEEKLY, INC., and THE BRADLEY NEWS WEEKLY,

Direct Appeal from the Circuit Court for Bradley County
No. V-98-494     Hon. John B. Hagler, Jr., Circuit Judge

---

No. E1999-01157-COA-R9-CV - Decided June 6, 2000

---

Defendants moved to dismiss plaintiff's defamation case for failure to state a cause of action. The Trial Judge overruled the motion and on interlocutory appeal, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission from the Trial Court; Ruling of the Circuit Court affirmed.**

FRANKS, J., delivered the opinion of the court, in which SUSANO, J., and SWINEY, J., joined.

Michael Raulston, Chattanooga, Tennessee for the Plaintiff-Appellee.

James Williams, Miller & Martin, LLP, Chattanooga, Tennessee, for Defendants-Appellants, Susan Shelton, Christian Miliman, John Doe and The Bradley County Weekly, Inc., a/k/a Bradley Weekly, Inc., and The Bradley News Weekly.

## OPINION

In this defamation action, the Trial Court overruled defendants' Motion to Dismiss, but authorized an interlocutory appeal, pursuant to Rule 9, Tenn. R. App. P., which this Court granted.

Plaintiff's complaint is based on editorial comments in the August 13-19th, 1997, edition of the *Bradley News Weekly*. Two editorials criticized the Cleveland City Government for the implementation for pay raises for certain city employees that were made against the recommendation of both the City Manager and an outside study. One of the editorials informed that the Mayor's executive assistant, Sue Zius, was among the employees who received a substantial raise. Because Zius worked closely with the Mayor and because the raises were contrary to the recommendations of the City Manager and the outside study, one of the editorials said the raise constitutes "hush money." This editorial, entitled "Eye on Cleveland," was written by an undisclosed author operating under the fictitious name "Art Newman," and contains the following:

> You see, Artsters, it seems certain members of the Council voted to give pay raises to certain people they know against the recommendation of a megabuck outside study AND the recommendation of City Manager George Wood. What does that tell you fellow citizens? What does it mean when there's no good reason to give someone a raise, but a politician goes ahead and does it anyway? I don't know about you, but to Ole Art it smells like pork.

> I'll tell you exactly what it is, it's hush money, says Ole Art, and let me tell you why. One of the folks that got a whopping raise was Mayor Tom's executive assistant, Sue Zius. You see, Sue "Zip a Lip" sits in the same office as Mayor Tom Rowland. She hears, she sees, she knows all. Young Miss Zius knows a lot about Mayor Tom. The raise she got Monday will amount to $12,000 buckaroos a year over time.

> What does Tom "Slick" Rowland have to hide, Ole Art wonders, that is worth 12 grand? How about this - did you know, fellow Bradley buddies, that Tom "Come Into My Parlor" Rowland, likes to offer liquor to young damsels in his city-owned office? Never mind that having liquor in city offices is strictly against policy, Ole Art wants to know why Uncle Tom would be offering drinks to single women in secluded locations in the first place.

The complaint also cites another editorial appearing in the Bradley County Weekly, entitled "It's Who You Know." That editorial contained the following:

> Robertson also acted as Mayor Tom Rowland's henchman in making a motion to boost the salary and pay grade of the executive assistant to the council and the mayor, Sue Zius. Zius' salary went from $30,222 per year to $30,971 per year. More importantly, under the recommended pay grade of the study, her salary would have topped out at $32,635. Under the pay grade that four members of the council approved, Zius' pay will top out at $42,702 for a position that is largely clerical and administrative.

> What was the real reason for authorizing such a hefty pay increase when most other employees are asked to bite the bullet? We leave that to your imagination.

-2-

Plaintiff claims these statements are defamatory in that they suggest she had been engaging in, or covering up, criminal or unethical conduct. She states that they caused her to be shunned, avoided and injured her reputation and standing.

The Trial Court, in denying defendants' Motion to Dismiss Mrs. Zius's complaint said:

> Mrs. Zius was, within the context of the case, both a public official and a public figure involved in a governmental transaction of a legitimate public interest, thus requiring clear and convincing proof of a high degree of awareness of probable falsity.

He further held that the statements made are capable of being understood as defamatory with respect to Mrs. Zius, and those statements were not based entirely upon disclosed, non-defamatory facts, and that the complaint adequately stated a cause of action by a public official or figure.

Publication of news articles and editorials are afforded constitutional protection. In the landmark case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710 (1964), the Supreme Court held that:

> The constitutional guarantees require, we think, a federal rule that prohibits a Public official from recovering damages for a defamatory falsehood relating to this Official conduct, unless he proves that the statement was made with "actual malice" that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. at 279-280, 84 S.Ct. at 726.

In *Revis v. McClean*, 2000 WL 266332 (Tenn. Ct. App. March 13, 2000), we said:

> Whether a communication is capable of conveying a defamatory meaning is a question of law. *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996). Review by the appellate court of the trial court's determination is *de novo*. *Baner v. Murphy,* 530 N.W.2d 1 (Wis. App. 1959). Allegedly defamatory statements should be judged within the context in which they are made. *Norse v. Henry Holt & Co.,* 991 F.2d 563 (9th Cir. 1993). They should be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances. *Pate v. Service Merchandise Co.,* 959 S.W.2d 569 (Tenn. Ct. App. 1996); *McKethan v. Texas Farm Bureau*, 996 F.2d 734 (5th Cir. 1993).
>
> Opinions are not automatically protected by the United States Constitution. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), but some states still hold that statements of opinion alone are not actionable. *See* 50 Am.Jur.2d *Libel and Slander* §161. The Restatement (followed by the Supreme Court in *Milkovich*) position is

that an opinion may be actionable if the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.  Restatement (2d) of Torts §566.

Defendants argue that plaintiff has failed to state a claim for libel because the statements were editorial opinions, based on non-defamatory published facts, and cite *Stones River Motors, Inc., v. Mid-South Pub. Co.,* 651 S.W.2d 713 (Tenn. Ct. App. 1983) in which the court said:

> It is now a matter of constitutional law that statements of opinion or characterizations based upon disclosed non-defamatory facts are not defamatory even though they are stated in strong or abusive terms.

*Id.* at 721.

However, the United States Supreme Court has since held there is no wholesale defamation exemption for anything that might be labeled "opinion."  *Milkovich.*   The Court reasoned that such an exemption would ignore that fact that expressions of "opinion" often imply an assertion of objective fact.

> If a speaker says, "In my opinion John Johns is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth.  Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Milkovich*, 497 U.S. at 18-19.

> The result reached by the Court in *Milkovich* is:

> where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of false implications or with reckless disregard for the truth.

*Id.*, 497 U.S. at 20.  The court relied on their prior case of *Philadelphia Newspapers, Inc., v. Hepps,*, 475 U.S. 767, 106 S.Ct. 1558 (1986) to draw this distinction:

> [A] statement on matters of public concern must be provable as false before there can be liability under state defamation law. . . . Thus, unlike the statement, "In my opinion Mayor Jones is a liar," the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," would not be actionable.

-4-

*Milkovich*, 497 U.S. at 19-20.

The Court further explained in a footnote:

[T]he statement, "I think Jones lied," may be provable as false on two levels. First, the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. It is, of course, the second level of falsity which would serve as the basis for a defamation action, though falsity at the first level may serve to establish malice where that is required for recovery.

*Id.* at note 7.

This Court has followed the holding in *Milkovich* that there is no absolute protection for "opinions". *See Revis* and *Moman v. M.M. Corp.*, 1997 WL 167210 (Tenn. Ct. App. April 10, 1997). The Court has recognized the distinction between "opinions" made in *Stones River Motors* from "opinions" that imply false and defamatory facts.

In this case, the statements made regarding Mrs. Zius fall into the latter category of "opinions" that imply false and defaming facts. As the Trial Court found, the statements of opinion "are capable of being understood as defamatory" and the statements of opinion were not based entirely upon disclosed non-defamatory facts, but rely upon alleged activities of which Mrs. Zius denies knowledge.

The statement that Mrs. Zius's raise amounts to hush money could be found to be detrimental to her reputation, as it implies she is aware of illegal or immoral activities, yet is willing to accept money to prevent her from disclosing information regarding those activities. Moreover, the characterization of the raises as "hush money" is not based solely on disclosed non-defamatory facts. While Mrs. Zius does not deny the raise or the recommendations against it, she denies all knowledge of illegal or improper activities on the part of the Mayor. If such facts are true and if Mrs. Zius does have knowledge of the Mayor's alleged conduct, then the defendants may use that truth as a defense to the claim. However, because this is a motion to dismiss, the allegations in the complaint must be taken as true, and we conclude as did the Trial Judge, that the complaint states a cause of action.

Plaintiff's counsel improperly raises as an issue the dismissal of Mike Zius's complaint. An interlocutory appeal was neither applied for nor granted on this issue. *See* Rule 9, Tenn. R. App. P.

Accordingly, we affirm the judgment of the Trial Court in overruling defendants' Motion to Dismiss.

The cost of the appeal is assessed to defendants.