IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2012 Session

## AEGIS SCIENCES CORPORATION v. LOU ANN ZELENIK, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 10C2913      Joseph P. Binkley, Jr., Judge**

**No. M2012-00898-COA-R3-CV - Filed January 16, 2013**

The trial court awarded summary judgment to Defendants in this action for defamation, civil conspiracy, and violation of the Tennessee Consumer Protection Act. Plaintiff appeals the award of summary judgment on its claims for defamation and civil conspiracy. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., joined. J. STEVEN STAFFORD, J., filed a dissenting opinion.

Joel T. Galanter and Tricia T. Olson, Nashville, Tennessee, for the appellant, Aegis Sciences Corporation.

Richard E. Spicer and Brent S. Usery, Nashville, Tennessee, and Robert E. Lee Davies, Franklin, Tennessee, for the appellees, Lou Ann Zelenik, Lou Ann for Congress and Jay Heine.

## OPINION

This action for defamation arises from a 2010 "negative" political advertisement. Plaintiff Aegis Sciences Corporation ("Aegis") is a Tennessee corporation with its principal place of business in Nashville. Aegis is a forensic chemical and drug testing laboratory whose services include doping control for amateur and professional sports, crime scene evidence analysis, medical investigations, employee drug testing, and pain management compliance monitoring. Aegis was founded in 1990 by David L. Black, Ph.D., D-ABFT ("Dr. Black"). Dr. Black is the president and CEO of Aegis. Dr. Black's wife, Diane Black (Mrs. Black or "Senator Black"), was a Tennessee State Senator running for the Republican nomination for Congress during the 2010 Congressional election period. Mrs. Black and

Defendant Lou Ann Zelenik (Ms. Zelenik) were opposing candidates, and Defendant Jay Heine (Mr. Heine) was the "Lou Ann for Congress" ("Zelenik campaign"; collectively, "Defendants") campaign manager.

The subject of the dispute between the parties is an advertisement ("the advertisement") run by the Zelenik campaign that depicted Senator Black handing an oversize check in the amount of one-million dollars to a man identified as Dr. Black. The check was written on the account of Tennessee Taxpayers, was signed by Senator Black, and was payable to Aegis Corporation. The visual image included a vocal statement that "Black's spending spree included a million bucks for a drug testing company; the company's owner, Diane Black's husband. Diane Black, big spending that hurt every Tennessee family except hers." In July 2010, legal counsel for Aegis sent written correspondence to Ms. Zelenik demanding the immediate retraction of the advertisement, corrective advertising, and an apology. Counsel stated that the assertions made in the advertisement were false, and that the advertisement harmed Aegis's reputation and was defamatory. The advertisement was not retracted, and contentious litigation ensued.

### Procedural Background

On July 28, 2010, Aegis filed a complaint in the Chancery Court for Davidson County, asserting claims for defamation and violation of the Tennessee Consumer Protection Act ("TCPA"). In its complaint, Aegis asserted that Defendants knew that the statements made in the advertisement that Mrs. Black was spending State funds on Aegis were false. It further asserted that any implication that Mrs. Black had advocated, approved, or voted in favor of any Aegis contract with a State department was false. Aegis asserted that it had never solicited nor obtained any assistance from Mrs. Black in relation to any prospective or existing contractual relationship with the State or its departments; that its contractual relationship with the State preceded Mrs. Black's service in the State legislature; and that Mrs. Black had no role whatsoever with respect to Aegis's contracts with the State. Aegis asserted that the advertisement harmed its professional reputation and goodwill. It prayed for immediate and permanent injunctive relief and damages, including corrective advertising and attorney's fees and treble damages under the TCPA. Aegis attached to its complaint correspondence from its legal counsel to Ms. Zelenik asserting, *inter alia*, that its contracts with the State preceded Mrs. Black's election to the legislature and that Mrs. Black had "no role whatsoever in relation to these contracts. . . ." Aegis stated that the statements made in the advertisement were both false and damaging and "intended to harm the reputation of Aegis by falsely accusing it of self-dealing and obtaining state funds and/or contracts through unethical and illegal means." It demanded that Defendants retract the advertisement, run corrective advertising, and apologize. The matter was transferred to the Circuit Court for Davidson County on July 29, 2010. On July 29, Aegis made its first application for a

temporary restraining order, which the trial court denied.

Defendants Lou Ann Zelenik and Lou Ann for Congress answered and counterclaimed on August 11, 2010. In their answer, Ms. Zelenik and the Zelenik campaign admitted the advertisement but denied that it was false, defamatory, or intended to harm Aegis. Ms. Zelenik and the Zelenik campaign counterclaimed, asserting Aegis's claims were frivolous and made in bad faith, and seeking damages under Tennessee Code Annotated § 47-18-109(e)(2). They further asserted a counterclaim for civil conspiracy and harassment, and prayed for damages for injury to reputation and emotional distress. The counterclaim sought a judgment for damages for violations of the TCPA and civil conspiracy and demanded a trial by jury.

On August 27, 2010, the trial court ordered the parties to engage in mediation and stayed discovery pending mediation. On September 2, it amended its order, ordering the parties to engage in "good faith" mediation and ordering discovery to be "frozen" pending mediation. The trial court continued the stay on discovery throughout the remainder of 2010. On January 14, 2011, Aegis moved the court to hold a scheduling conference and to lift the stay on "all matters." In its motion, Aegis notified the court that the parties had engaged in good faith mediation but that mediation was unsuccessful. The trial court granted the motion by order entered on February 7, 2011. In its February 7 order, the trial court lifted the stay and instructed the parties to complete discovery and reach an agreed scheduling order. Ms. Zelenik and the Zelenik campaign filed a notice of voluntary nonsuit of their counterclaims on March 21, 2011.

On March 22, 2011, Aegis served Ms. Zelenik with a notice of deposition to be taken on April 26, 2011. Ms. Zelenik filed a motion to quash on April 25, 2011, asserting counsel had become involved in the case "just recently," and that attempts to resolve the discovery dispute had been unsuccessful. In May 2011, Aegis filed a notice of proof of service of subpoena issued by the Superior Court of the District of Columbia served on Jonathan Downs as registered agent for Bright Media, Inc. ("Bright Media"). In its subpoena for deposition and production of records, Aegis demanded the production of all documents relating "in any way" to the creation or publication of ads for the Zelenik campaign and for "all communications that relate in any way to Lou Ann Zelenik For Congress." It also filed a notice of filing of executed return on service of subpoena served on Kerri Zelenik Burton (Ms. Burton) issued by the District Court of Douglas County, Nebraska. It attached a "petition to compel a witness to appear and testify," and an order of the Nebraska court granting the petition directing the clerk of the court to issue a subpoena duces tecum upon Ms. Burton. In June 2011, Ms. Zelenik filed a motion for protective order, asserting that, prior to depositions scheduled to be taken of representatives of Bright Media, counsel for Bright Media sent Plaintiff's counsel a computer disk containing approximately 4,000 pages

of campaign-related documents that was not sent to counsel for Defendants. Ms. Zelenik asserted the disk and depositions taken of Bright Media contained confidential information. She moved the trial court for an order prohibiting Plaintiff's counsel from disclosing or disseminating the information to anyone, including Aegis. On June 9, 2011, the trial court entered an order quashing scheduled depositions and granting the parties two weeks to agree to a scheduling order. The court ordered that "[n]o more depositions shall be set until all issues regarding written discovery have been resolved by the [c]ourt."

On June 15, Aegis moved the trial court to enter a scheduling order. By agreement of the parties, on June 20 the trial court set Aegis's motion to be heard on July 29, 2011. On June 24, 2011, Aegis filed a motion for leave to amend its complaint, which the trial court granted on July 13. Aegis filed its first amended complaint on July 18, 2011, adding Bright Media as a Defendant and asserting claims for defamation, violations of the TCPA, and civil conspiracy. In its amended complaint (hereinafter, "complaint"), Aegis asserted Defendants agreed to issue false and defamatory statements and then executed the agreement by falsely claiming in the advertisement, distributed in various media outlets, that Aegis received one million dollars in State funds from then Senator Black. It further asserted that, prior to issuing the false and defamatory statements, Defendants conducted consumer surveys regarding the allegations and discovered that the false allegations would significantly damage Aegis. Aegis asserted that Defendants created and widely published the defamatory advertisements which Defendants themselves characterized as "hateful." Aegis prayed for injunctive relief, damages in an unspecified amount, and corrective advertising.

Ms. Zelenik answered and denied allegations of wrongdoing in September 2011. Ms. Zelenik admitted to the advertisement, but denied that they were false or defamatory. She further asserted the advertisement was protected under the First Amendment and "any other applicable Constitutional or Legal Rights," and that the statements made in the political advertisements were "fair characterizations and comment on matters of public interest taken by public officials and public figures." She asserted Aegis lacked standing to assert its claims, that it had failed to state a claim for relief, and asserted the defense of the statute of limitations. She further asserted immunity from suit and the doctrine of unclean hands. The Zelenik campaign answered on September 7, 2011, denying the statements made in the advertisement were false or defamatory. The Zelenik campaign asserted eight affirmative defenses, including failure to state a claim; res judicata or collateral estoppel; the statute of limitations; unclean hands; standing; and the failure to mitigate damages. On October 24, Mr. Heine filed an answer that generally mirrored that of the Zelenik campaign. Bright Media and Aegis settled the matter and on September 2, 2011, Aegis dismissed its claims against Bright Media. Following uncooperative discovery and numerous motions to compel discovery and for a scheduling order filed through the Fall of 2011, the trial court held a hearing on discovery issues in November 2011. By order entered January 18, 2012, the trial

court directed Aegis to comply with numerous interrogatory requests, including any documents in support of Aegis' claim for damages.

On January 20, 2012, Defendants filed a joint motion for summary judgment. In their motion, Defendants asserted that they did not defame Aegis because, as a matter of law the advertisements at issue were not capable of a defamatory meaning, were true, and were not published with actual malice. They additionally asserted that Defendants' actions did not give rise to a claim under the TCPA or for civil conspiracy. On January 25, 2012, the trial judge recused himself upon request of Ms. Zelenik, and the matter was transferred from the first circuit court to the fifth. In March 2012, the parties entered an agreed order on Ms. Zelenik's motion for a protective order, agreeing that the "informal [a]greed [p]rotective [o]rder" that had been in place would be continued, and that the matter would be deferred for a full hearing until after the hearing on Defendants' motion for summary judgment.

Aegis filed its response in opposition to Defendants' motion for summary judgment on March 9, 2012. In its response, Aegis asserted that the defamatory message contained in the video advertisement was clear where it "put forth the clear message that Aegis accepted graft, 'bought' business improperly, and was lacking in integrity." It further asserted that, although the statement or message was promulgated as part of a political campaign, Aegis is a private company and "[t]he pendency of a political contest involving others does not minimize defamation of third parties." Aegis asserted that genuine issues of material fact existed with respect to its claims for defamation and civil conspiracy. Aegis did not contest summary judgment as to its claims under the TCPA.

The trial court heard Defendants' motion for summary judgment on March 21, 2012. By order entered on April 16, the trial court dismissed Aegis's claim under the TCPA. The trial court determined that, judged in light of the context in which it was made, no reasonable person of ordinary intelligence could find that the advertisement was capable of a defamatory meaning as a matter of law. It further determined that the communication was not factually false, or was at least substantially true. The trial court determined that, because Aegis had failed to demonstrate defamation, its claim for civil conspiracy failed where the claim requires two or more persons having intent to accomplish by concert an unlawful purpose, or a lawful purpose by unlawful means. The trial court awarded summary judgment to Defendants and dismissed Aegis's complaint. Aegis filed a timely notice of appeal to this Court.

### *Issues Presented*

Aegis presents the following issues for our review:

(1)     Whether the trial court erred when it granted summary judgment without first lifting the stay on discovery and allowing Aegis to conduct reasonable fact-finding discovery?

(2)     Whether the trial court erred when it held, as a matter of law, that no reasonable person of ordinary intelligence could find that the Subject Advertising is capable of a defamatory meaning?

(3)     Whether the trial court erred when it held that the Subject Advertisement was not factually false or, to the contrary, was true or at least substantially true?

(4)     Whether the trial court erred when it held that Aegis has no claim for civil conspiracy as a result of its findings with respect to issues 2 and 3?

## *Standard of Review*

We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. at 83 (quoting Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id*. (citing *see Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)).

After the moving party has made a properly supported motion, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* at 84, (citing *McCarley*, 960 S.W.2d at 588; *Byr*d, 847 S.W.2d at 215). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.02 of the Tennessee Rules of Civil Procedure. *Id.* (citing *McCarley*, 960 S.W.2d at 588; accord *Byrd*,

847 S.W.2d at 215 n. 6). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id*. (citing *McCarley*, 960 S.W.2d at 588). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Id.* at 84 (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *id*.). With this standard in mind, we turn to the issues raised on appeal.

### *Discussion*

Aegis asserts that the advertisement, construed as a whole, falsely depicts Aegis and Dr. Black receiving improper payments from then State Senator Black and implies that Aegis accepted or solicited "graft." Aegis asserts the advertisement was intended to imply nepotism and that Aegis received a no-bid contract with the assistance of Mrs. Black. It contends that Defendants intentionally and deliberately identified it by name in the advertisement, thereby defaming its reputation for honesty and integrity.

Defendants, on the other hand, contend the advertisement was intended to communicate concerns about the record of Senator/candidate Black. Defendants assert that, although Aegis's name appears in the advertisement, the advertisement neither states nor alleges that Aegis engaged in any wrongful, unethical, or illegal conduct. Defendants assert that the advertisement is neither defamatory nor false where Mrs. Black's voting record supports the message conveyed in the advertisement and where Aegis did, in fact, receive a million dollars under contracts with the State. It asserts the trial court correctly determined that, as a matter of law, the advertisement was neither defamatory nor false.

The basis of a defamation action, whether it be for libel or slander, is that the allegedly defamatory statement has injured the plaintiff's character and reputation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, (Tenn. 1994)(citation omitted). To establish a prima facie case, the plaintiff in a defamation action must establish "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). Only false statements are actionable, and truth is a nearly universal defense. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001)(citations omitted). "'[I]n defamation cases the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world.'" *Id.* (quoting *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 83 (1984)(quoting Thomas Emerson, The Right of Privacy and Freedom of the Press, 14 Harv. C.R.-C.L. L.Rev. 329, 333 (1979))). For a written statement to be defamatory, "'it must constitute a serious threat

to the plaintiff's reputation.'" *Revis v. McClean*, 31 S.W.3d 250, 252-53 (Tenn. Ct. App. 2000)(quoting *Stones River Motors, Inc. v. Mid–South Publ'g Co., Inc.*, 651 S.W.2d 713, 719 (Tenn. Ct. App.1983) (citations omitted)). A published statement is not libelous because the subject of the publication finds it "'annoying, offensive or embarrassing.'" *Id.* (quoting *id.*). Rather, the statement "must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule[]" and convey "an element 'of disgrace.'" *Id.* (quoting *id.*). A statement is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005)(quoting Restatement (Second) of Torts § 559 (1977); *see also Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994) (holding that the basis of a defamation action is that the defamation resulted in injury to the plaintiff's character or reputation); *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (holding that the defamatory statement must result in injury to the plaintiff's character and reputation)). With these principles in mind, we turn to the issues raised for our review.

We turn first to the trial court's determination that the advertisement at issue in this matter was not capable of conveying a defamatory meaning as a matter of law. The question of whether a statement was understood in a defamatory sense generally is a question of fact for the trier of fact. *Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.*, 651 S.W.2d 713, 719 (Tenn. Ct. App.1983)). However, the preliminary question of whether a statement "is capable of conveying a defamatory meaning" presents a question of law. *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000). A statement alleged to be defamatory must be judged within the context in which it was made. *Id.* (citation omitted). Additionally, the statement "should be read as a person of ordinary intelligence would understand [it] in light of the surrounding circumstances." *Id.* (citations omitted). A trial court may determine that, as a matter of law, a statement is not defamatory only when "the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Biltcliffe*, 2005 WL 2860164, at *4 (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C.Cir. 1990)). We review the trial court's determination on this matter *de novo*, with no presumption of correctness. *Zius v. Shelton*, No. E1999-01157-COA-R9-CV, 2000 WL 739466, *2 (Tenn. Ct. App. June 6, 2000).

In this case, Aegis asserts the political advertisement at issue clearly indicates that Aegis solicited or received improper assistance from Mrs. Black. It asserts that the advertisement harms its reputation by conveying that it was the recipient of "graft." Having viewed the video of the advertisement, we agree with the trial court that it is not capable of conveying a defamatory meaning, particularly when understood in the context of political advertising, which it clearly is. Notwithstanding the contentions put forward by the parties

with respect to the intended message of the advertisement, the advertisement itself states nothing with respect to Aegis other than it received one million dollars from the State of Tennessee. Aegis does not deny that its contractual relationship with the State generated revenue in this amount. Whether the advertisement states or implies that Mrs. Black's voting record was influenced by Aegis's contractual relationship with various departments of State government, and the veracity of any such statement, is not the issue in this case. Mrs. Black's actions and motivations are not issues here. The relevant inquiry here concerns the statements contained in the advertisement with respect to Aegis. We agree with the trial court that the advertisement cannot be reasonably construed to convey the message that Aegis solicited or received "graft." The message conveyed by the advertisement, reasonably construed, is that then Senator Black was a "big spender" whose "spending spree" benefitted Aegis. This message cannot be reasonably construed as holding Aegis up to public hatred, ridicule or disgrace. We affirm on this issue.

We turn next to whether the trial court erred by dismissing Aegis's claim for civil conspiracy upon determining that its claim for defamation failed as a matter of law. To succeed on a claim for civil conspiracy, the plaintiff must demonstrate "'an underlying predicate tort allegedly committed pursuant to the conspiracy.'" *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010)(quoting *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007)). There is no independent action for conspiracy in the absence of an underlying actionable tort. *Id.* (citing *id*. at 179–80). Accordingly, the trial court did not err by dismissing Aegis's claim for civil conspiracy upon determining Aegis had failed to demonstrate the underlying tort of defamation. In light of our holding with respect to the trial court's determination that Aegis's claim for defamation failed as a matter of law, we affirm dismissal of Aegis's claim for civil conspiracy.

We turn finally to Aegis's assertion that the trial court erred by awarding summary judgment to Defendants before Aegis was able to complete discovery. Aegis submits that it was never afforded the opportunity to depose Ms. Zelenik, Mr. Heine, or "key employees" of the Zelenik campaign, and that a ruling on Defendants' motion for summary judgment was premature where discovery was not complete. As Aegis asserted in its memorandum response in opposition to Defendants' motion for summary judgment, however, the question before the trial court with respect to the summary judgment motion was whether the advertisement was capable of defaming Aegis as a matter of law. In its response to the trial court, Aegis "suggest[ed] that viewing the video itself answers the question." We agree.

Additional discovery was not required for the trial court to determine whether the statements made in the advertisement were capable of a defamatory meaning with respect to Aegis. Further, Aegis did not assert in its response in opposition to Defendants' motion for summary judgment or in its accompanying memorandum that additional discovery was

required to resolve the matters before the court.  We find no error on the part of the trial court.

## *Holding*

In light of the foregoing, the judgment of the trial court is affirmed.  Remaining issues are pretermitted as unnecessary.  This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.  Costs on appeal are taxed to the Appellant, Aegis Sciences Corporation, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE