IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 16, 2013 Session

**STACY HARRIS V. GAYLORD ENTERTAINMENT COMPANY, ET AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 12C5037     Joseph P. Binkley, Jr., Judge**

**No. M2013-00689-COA-R3-CV - Filed December 19, 2013**

Musicologist and journalist plaintiff filed a complaint alleging companies that host media
events interfered with her business relationships by refusing to issue her press credentials to
the events Defendants host. Plaintiff also alleged Defendants invaded her privacy by casting
her in a false light when a representative made a statement to Plaintiff indicating she had not
been invited to a particular media event. The trial court dismissed Plaintiff's complaint upon
Defendants' motion to dismiss based on Plaintiff's failure to state a claim for which relief
could be granted. Plaintiff appeals, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G.
CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Stacy Harris, Nashville, Tennessee, *Pro Se.*

Erik O. Thorngren, Richard Horton Frank, III, Nashville, Tennessee, for the appellee,
Gaylord Entertainment Company, *et al.*

**OPINION**

Stacy Harris filed a complaint against Gaylord Entertainment Company, d/b/a RHP
Properties, Inc., Country Music Association, Inc., and Country Music Foundation, Inc. Ms.
Harris asserted claims for tortious interference with her business relationships and false light
invasion of privacy. Ms. Harris sought injunctive relief as well as damages. Defendants
filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), in which
they asserted Ms. Harris failed to state a claim upon which relief could be granted. The trial

court granted Defendants' motion and dismissed Ms. Harris's Complaint. Ms. Harris appealed.

## I. MS. HARRIS'S COMPLAINT

In her Complaint, Ms. Harris alleged she is a country-music historian, ethnomusicologist, media personality, and journalist who requires access to artists, songwriters, and others in the music industry to practice her profession. Ms. Harris alleged Defendants control her and other journalists' access to these individuals through a credentialing process. The credentialing process permits individuals, such as Ms. Harris, to attend various events and venues by invitation.

Ms. Harris then described her experience at an event to which she had been invited, which was the basis of her false light invasion of privacy claim. Ms. Harris asserted the following in Paragraph 10 of her Complaint:

> By way of example and not by way of limitation, a Coyne PR publicist contacted Plaintiff, inviting her to a news conference announcing the partnership between Coyne and CMA and also announcing a partnership of the Country Music Association with Coyne PR client and event spokesperson, country singer Martina McBride. Plaintiff had never met McBride to that point and the news conference marked plaintiff's personal introduction to the Coyne PR team. Before the news conference began, a Coyne PR representative issued plaintiff a media kit and plaintiff took her seat among her peers. The news conference featured several speakers including the soon-to-be dismissed Executive Director of the County Music Association, Tammy Genovese. Plaintiff was not aware that Ms. Genovese was to be among the speakers nor was she aware of Ms. Genovese's presence in the room to that point. There was some interaction between Ms. Genovese and the Coyne PR representative during the period from Ms. Genovese's arrival at the news conference and Ms. Genovese's formal remarks as when Ms. Genovese left the room following her remarks the following events took place: A Mary Kay representative spoke of her company's involvement in the project and, at the conclusion of her speech, opened the floor for questions. In response, plaintiff raised her hand and was called on to ask questions. Before plaintiff was able to complete her question she was interrupted by a Coyne PR official who stated, "I'm sorry, but we're only taking questions from invited journalists." Shocked, plaintiff responded, "I am an invited journalist. You (*i.e.*, another Coyne PR representative) invited me."

That was not the sort of impression that plaintiff wanted to make on McBride, a potential future contact. More importantly, plaintiff was embarrassed that her peers would be led to believe Plaintiff was an event-crasher.

Ms. Harris alleged that Defendants' collective acts and omissions described in Paragraph 10 cast her in a false light and damaged her reputation.

With regard to her claim for tortious interference with business relationships, Ms. Harris asserted the following in Paragraph 9 of her Complaint:

Recently, plaintiff has been denied credentials for an event by the publicist who emailed her with an invitation to cover the function. . . . The denial of access articulated hereinabove is both unreasonable and tortuous [sic]. Defendants, individually and in combination, have denied and continue to deny credentials and access to plaintiff intentionally. Defendants, individually and in combination, have at all times pertinent had actual knowledge that such denial would not only adversely affect plaintiff's ability to practice her profession but also cause her financial damage.

Ms. Harris then asserted the following in Paragraph 12 of her Complaint:

Now and at all times pertinent, defendants, individually and collectively, had and have actual knowledge not only of plaintiff's existing relationships with those persons to whom her access has been and is being denied but also some of plaintiff's likely prospective business relationships with such persons and other persons similarly situated. Defendants, individually and collectively, have denied and continue to deny plaintiff the access that she requires with the express intent of damaging plaintiff's career and causing her both psychological and financial injury. Such intent is an improper motive as a matter of law, and the systematic denial of access herein articulated is calculated to cause damage.

Ms. Harris alleged she has suffered damage to her reputation and direct financial damage as a result of Defendants' individual and collective acts and omissions described in Paragraph 12. Ms. Harris asked the court to grant her injunctive relief by enjoining Defendants

"from further wrongful and tortuous [sic] failure to grant plaintiff credentials."
Ms. Harris also sought money damages "in excess of $25,000.00."

Defendants filed a motion to dismiss, arguing that Ms. Harris is not entitled as a matter of law to the credentials necessary to attend events hosted by Defendants that are located on private property and that Defendants owe Ms. Harris no duty to extend credentials to her. Thus, they contend, Ms. Harris has failed to set forth a claim for interference with her business relationships. In her Opposition, Ms. Harris acknowledged she has no right to the credentials she alleged Defendants had denied her.[1]

On the false light invasion of privacy claim, Defendants argued, first, that Ms. Harris failed to assert Defendants gave publicity to the statement forming the basis for Ms. Harris's claim. Second, Defendants contend the statement about which Ms. Harris complained would not be highly offensive to a reasonable person, and, therefore, cannot support a claim for false light invasion of privacy.

## II. TRIAL COURT'S ORDER

The trial court agreed with Defendants' arguments and granted their motion to dismiss Ms. Harris's Complaint. With regard to Ms. Harris's claim for interference with her business relationships, the court wrote:

> 8. The Plaintiff does not have a legally enforceable right to have access to artists, songwriters and others in the country music entertainment business.
>
> 9. Because the Plaintiff has no legally enforceable right to have access to artists, songwriters and others in the music entertainment business, the Defendants have no duty to extend press credentials or to invite the Plaintiff to media events or respond to her requests for interviews or provide her with other information about the country music entertainment business.
>
> 10. Because the Defendants have no duty to provide Plaintiff access to artists, songwriters and others in the music entertainment business, her Complaint fails to state a claim for interference with her business relationships based on her allegation that the defendants denied her access to artists, songwriters and others in the music entertainment business.

---

[1]Ms. Harris wrote, "[T]he defendants are absolutely correct in insisting that the plaintiff has no 'right' to access. She does, however, have an absolute right not to be subjected to the tortuous [sic] behavior described."

11.  Because the Defendants have no duty to provide Plaintiff access to artists, songwriters and others in the music entertainment business, the Plaintiff is not entitled to the injunctive relief she seeks to require Defendants to issue press credentials and invite her to media events hosted by them and attended by artists, songwriters and others in the music entertainment business.

Turning to Ms. Harris's false light invasion of privacy claim, the trial court reviewed the elements Ms. Harris was required to plead to state a claim.  It then wrote:

16.  The Court is of the opinion and finds that the Plaintiff must plead and prove that the matter she claims cast her in a false light must be made public to a larger body of individuals than those of her peers she described in paragraph 10 of her Complaint.

17.  The Court therefore concludes that the Plaintiff has failed to state a claim for false light invasion of privacy because the Defendants did not give publicity to the statement by publicizing it before the public at large.

18.   Even if the Defendants did give publicity to the statement the Plaintiff claims cast her in a false light, the Court may rule as a matter of law on a motion to dismiss pursuant to Rule 12.02(6) that the statement would not be highly offensive to a reasonable person.

19.   The Court has reviewed the well plead allegations of fact in the Plaintiff's Complaint and finds that the statement the Plaintiff alleges cast her in a false light would not as a matter of law be highly offensive to a reasonable person.

20.  The Court therefore concludes that the Plaintiff has failed to state a claim for false light invasion of privacy because the statement she alleges cast her in a false light was not highly offensive to a reasonable person as a matter of law.

### III. STANDARD OF REVIEW

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint itself, not the strength of the plaintiff's proof.  *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).  The standard of appellate review of a dismissal under Rule

12.02(6) requires that we take the factual allegations in the complaint as true. *Willis*, 113 S.W.3d at 710. The trial court should grant a motion to dismiss only "when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id*.

A court reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, and by giving the plaintiff the benefit of all inferences that can be reasonably drawn from the pleaded facts. *Webb*, 346 S.W.3d at 426; *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31 (Tenn. 2007); *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997). For the purposes of such a motion, the moving party admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from those facts. *Webb*, 346 S.W.3d at 426; *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997).

On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, this court must, like the trial court, presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*, without a presumption of correctness. *Willis*, 113 S.W.3d at 710; *421 Corporation v. Metropolitan Government of Nashville and Davidson County*, 36 S.W.3d 469, 479 (Tenn. Ct. App. 2000); *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997).

## IV. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

On appeal, Ms. Harris argues the trial court erred in its determination of the duty Defendants owed her. Citing *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995), Ms. Harris contends Defendants owed her the duty "to conform to a reasonable person's standard of conduct." Unlike this case, however, *McCall* involved negligent conduct, and one of the issues in *McCall* was whether the defendant "conform[ed] to a reasonable person standard of care for the protection against unreasonable risks of harm." *Id*. at 153.

In contrast to *McCall*, Ms. Harris contends Defendants acted intentionally, not negligently, by interfering with her business relationships. The tort of intentional interference with business relationships was expressly adopted by our Supreme Court in the case *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002). The Court there set forth the elements a plaintiff must prove to prevail on this cause of action:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;

(2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general;

(3) the defendant's intent to cause the breach or termination of the business relationship;

(4) the defendant's improper motive or improper means; and finally,

(5) damages resulting from the tortious interference.

*Id.* at 701.

Ms. Harris contends Defendants interfered with her business relationships by failing to extend to her the credentials that would enable her to attend the private events Defendants hosted or controlled. In order to establish Defendants acted wrongfully, Ms. Harris must show she is entitled to these credentials. In other words, unless Defendants have a "duty," or obligation, to extend these credentials to Ms. Harris, she cannot establish Defendants acted wrongfully by failing to extend the credentials to her. The "duty" referred to here is not the same "duty" discussed in *McCall*, because there is no reasonable person standard involved in determining whether Ms. Harris is entitled to receive the credentials to attend Defendants' events.

Ms. Harris acknowledged in her trial court filings and during oral argument that Defendants are not obligated to extend press credentials to her and that she has no entitlement to these credentials. Given her acknowledgment, there is no basis for Ms. Harris's contention that Defendants have interfered with her business relationships. There is no other conduct by Defendants about which Ms. Harris complains. If Defendants owe Ms. Harris no obligation to extend credentials to her, Defendants' failure or refusal to extend these credentials to Ms. Harris cannot be deemed wrongful.

In addition to failing to identify wrongful conduct by Defendants, Ms. Harris does not allege in her Complaint the other elements necessary to state a claim for interference with business relationships. Specifically, Ms. Harris does not allege an existing or prospective relationship with any particular third party,[2] Defendants' knowledge of any particular business relationship, or Defendants' intent to interfere with any specific business relationship. As a result, we agree with the trial court that Ms. Harris has failed to state a

---

[2]Ms. Harris describes Ms. McBride as a "potential future contact," but this description does not rise to the level of a prospective business relationship for purposes of the tort.

claim for intentional interference with her business relationships. We therefore affirm the trial court's dismissal of this cause of action.

## V. FALSE LIGHT INVASION OF PRIVACY

We turn now to Ms. Harris's claim that Defendants are liable for false light invasion of privacy. Ms. Harris bases this claim on the statement a Coyne PR representative made to her when Ms. Harris raised her hand to ask a question following a presentation by a Mary Kay representative. The Coyne PR representative said, "I'm sorry, but we're only taking questions from invited journalists." Ms. Harris contends this statement embarrassed her and caused her peers to believe she was not invited to the event, which was not true, and that she was an "event-crasher."

Tennessee recognizes the tort of false light invasion of privacy as set forth in the RESTATEMENT (SECOND) OF TORTS § 652E (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001).

In its Order, the trial court determined that the statement Ms. Harris contends placed her in a false light "would not as a matter of law be highly offensive to a reasonable person." Ms. Harris argues on appeal that the trial court improperly invaded the province of the jury in making this determination.

Comment c to § 652E of the Restatement addresses the "highly offensive to a reasonable person" element of the tort:

> The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be

justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . . It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

In pursuing a false light claim, "the hypersensitive plaintiff cannot recover under a false light claim where the publicized matter attributed to the plaintiff was, even if intentionally falsified, not a seriously offensive statement." *West*, 53 S.W.3d at 646. In *Burnette v. Porter*, 2011 WL 4529612, at *3 (Tenn. Ct. App. Sept. 30, 2011), the Court of Appeals addressed the meaning of "highly offensive" for purposes of finding a defendant liable for invasion of privacy:

It is not enough that the particular plaintiff is personally offended because this person may be unusually sensitive or susceptible. What is objectively offensive is largely a matter of social conventions and expectations as recognized by the law. *See, e.g., Roe ex rel. Roe v. Heap*, 2004 WL 1109849 (Ohio Ct. App. May 11, 2004) ("The intrusion must be of such a character as would shock the ordinary person to the point of emotional distress. . . . Thus, the standard is similar to that applicable to claims of intentional infliction of emotional distress.")

Statements alleged to be defamatory or to place another in a false light must harm the reputation of the complaining party to be actionable. *Patterson v. Grant-Herms*, 2013 WL 5568427, at*3-5 (Tenn. Ct. App. Oct. 8, 2013). This court has held that "[t]he issue of whether a communication is capable of conveying a defamatory meaning is a question of law for the court to decide in the first instance." *Brown*, 393 S.W.3d at 708. "To make this determination, courts 'must look to the words themselves and are not bound by the plaintiff's interpretation of them.'" *Id*. (citing *Stones River Motors, Inc., v. Mid-South Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983)); *see Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000) (whether communication is defamatory should be determined based on context in which it is made and as person of ordinary intelligence would understand them in light of surrounding circumstances); *see also Gunter v. Emerton*, 2002 WL 1015808, at *3 (Tenn. Ct. App. May 21, 2002) (Court of Appeals upheld trial court's determination in granting defendant's motion for summary judgment that statement did not produce false impression about plaintiff); *Patterson v. Grant-Herms*, 2013 WL 5568427 (Tenn. Ct. App. Oct. 8, 2013) (Cottrell, J., dissenting) (statement at issue in false light claim was not highly

offensive to reasonable person as matter of law).[3]

Our review of Ms. Harris's Complaint leads us to conclude that the trial court was correct in ruling that the statement about which Ms. Harris complains is not highly offensive to the reasonable person. Although the statement "I'm sorry, but we're only taking questions from invited journalists" may have caused some of Ms. Harris's peers to believe she had not been invited to the event in question, the statement does not reach the level of being "highly offensive," as it must, for Ms. Harris to sustain a false light cause of action. A "reasonable person" would not find the statement, or the implication from the statement, to be highly offensive or harmful to Ms. Harris's reputation. The statement does not affect Ms. Harris's reputation as a country-music historian, ethnomusicologist, media personality, or journalist. Moreover, Ms. Harris's response to the Coyne PR representative that she was in fact invited to the event should have alleviated any concerns Ms. Harris had.

In addition to the requirement that the statement be "highly offensive to the reasonable person," Ms. Harris must also allege the offensive statement was widely publicized and not disclosed to just a small group of people. *Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 707 (Tenn. Ct. App. 2012); *see Brown v. Christian Bros. University*, 2013 WL 3982137, at *10 (Tenn. Ct. App. Aug. 15, 2013) ("publicity" element of invasion of privacy claim requires statement be made to more than small group of people). "Publicity" for purposes of a false light invasion of privacy claim means

> the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

*Brown*, 393 S.W.3d at 707 (quoting RESTATEMENT (SECOND) OF TORTS § 652E and comment a to § 652D).

Nowhere in Ms. Harris's Complaint does she allege Defendants gave publicity to the public at large of the statement about which Ms. Harris complains. Ms. Harris's failure to allege this element of the false light invasion of privacy cause of action, without more, is sufficient to cause her claim to fail. We therefore need not address the final requirement of the claim, that Defendants "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

---

[3]Courts may determine as a matter of law whether a statement is defamatory or place another in a false light because in each instance the standard is that of the "reasonable person."

Because of the deficiencies in Ms. Harris's Complaint for false light invasion of privacy, we affirm the trial court's dismissal of this claim.

## VI. CONCLUSION

We affirm the trial court's judgment granting Defendants' motion to dismiss Ms. Harris's Complaint for failing to state a claim for which relief can be granted. Costs of this appeal shall be taxed to the appellant, Stacy Harris.

_____
PATRICIA J. COTTRELL, JUDGE